UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------

In re:                                                       Chapter 13


Lenny Permal

                                                             Case No.: 18-10451

                              Debtors.
------------------------------------------------------------

## OBJECTION TO CONFIRMATION OF THE DEBTOR'S
## PROPOSED CHAPTER 13 PLAN

NOW COMES NJCC-NYS CRF REO Subsidiary LLC by and through its attorneys, Knuckles, Komosinski, & Manfro, LLP, and in support of its objection to confirmation of the proposed Chapter 13 plan of debtor Lenny Permal (the "Debtor"), states as follows:

1.      NJCC-NYS CRF REO Subsidiary LLC is the secured creditor of the Debtor pursuant to a note and mortgage executed by the Debtor on December 31, 2007, on property located at 102 McClellan Street, Schenectady, NY 12304.  NJCC-NYS CRF REO Subsidiary LLC is the current holder of the note. Copies of the Note, Mortgage and assignment are annexed hereto as **Exhibit A**.

2.      On or about March 20, 2018, the Debtor herein filed the instant petition under Chapter 13 of the Bankruptcy Code and pursuant thereto the automatic stay was imposed.

3.      The amount of NJCC-NYS CRF REO Subsidiary LLC's secured claim is $199,610.73, of which $128,994.48 are pre-petition arrears.

4.      Debtor's plan proposes to pay pre-petition arrears in the sum of $0.00, to NJCC-NYS CRF REO Subsidiary LLC.  A copy of the Plan is annexed hereto as **Exhibit B.**

5.      Consequently, NJCC-NYS CRF REO Subsidiary LLC is not adequately provided for in the Debtor's Chapter 13 Plan and objects to confirmation of said plan.

6. NJCC-NYS CRF REO Subsidiary LLC will withdraw its objection provided the Debtor files an Amended Chapter 13 Plan sufficient to fund NJCC-NYS CRF REO Subsidiary LLC.

7. NJCC-NYS CRF REO Subsidiary LLC respectfully requests that an additional fee of $500.00 be added to its proof of claim arrears, for the cost of preparing this objection and appearing before this Court on the date of the confirmation hearing.

WHEREFORE, NJCC-NYS CRF REO Subsidiary LLC respectfully requests that confirmation of the Debtor's plan be denied and such other and further relief as is just, proper, and equitable.

Dated:          Elmsford, New York
                May 22, 2018

                Law Offices of Knuckles, Komosinski & Manfro, LLP
                Attorneys for NJCC-NYS CRF REO Subsidiary LLC

                By: _Sara A. Coletti_____
                    Sara A. Coletti, Esq.
                    565 Taxter Road, Suite 590
                    Elmsford, NY 10523
                    (914) 345-3020
                    SAC@kkmllp.com

**EXHIBIT  A**

MIN: 1001421-0071128006-0                                Loan Number: 0071128006

## NOTE

FHA CASE NO.
371-3744673-703

DECEMBER 31, 2007
        [Date]

102 MCCLELLAN ST, SCHENECTADY, NEW YORK 12304
                [Property Address]

**1. PARTIES**
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means
FIRST ALTERNATIVE MORTGAGE CORP, A NEW YORK CORPORATION (CFL #
100284)
                                                        and its successors and assigns.

**2. BORROWER'S PROMISE TO PAY; INTEREST**
    In return for a loan received from Lender, Borrower promises to pay the principal sum of   EIGHTY-FOUR
THOUSAND FIVE HUNDRED SEVENTY-TWO AND 00/100                          Dollars
(U.S.$ 84,572.00          ), plus interest, to the order of Lender. Interest will be charged on unpaid principal,
from the date of disbursement of the loan proceeds by Lender, at the rate of   SIX AND 500/1000
                                            percent (     6.500  %) per year
until the full amount of principal has been paid.

**3. PROMISE TO PAY SECURED**
    Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same
date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might
result if Borrower defaults under this Note.

**4. MANNER OF PAYMENT**
    **(A)  Time**
    Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning
on   FEBRUARY 1, 2008          . Any principal and interest remaining on the first day of
JANUARY 1, 2038          , will be due on that date, which is called the "Maturity Date."

    **(B)  Place**
    Payment shall be made at   145 HUGUENOT ST, #109, NEW ROCHELLE, NEW YORK
10801
                            or at such other place as Lender may designate in writing by notice to Borrower.

    **(C)  Amount**
    Each monthly payment of principal and interest will be in the amount of U.S.$  534.55                 .
This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal,
interest and other items in the order described in the Security Instrument.

    **(D)  Allonge to this Note for Payment Adjustments**
    If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the
allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part
of this Note. (Check applicable box.)

    ☐ Growing Equity Allonge                    ☐ Graduated Payment Allonge

    ☐ Other [specify]

**5. BORROWER'S RIGHT TO PREPAY**
    Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first
day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid
for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower
makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender
agrees in writing to those changes.


610 022711480 N 001 001

## 6.  BORROWER'S FAILURE TO PAY

### (A)  Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR AND 000/1000                                                        percent (          4.000 %) of the overdue amount of each payment.

### (B)  Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C)  Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7.  WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 and 2 of this Note.

_Lenny Permal_ _____ (Seal)          _Walliamma Permal_ _____ (Seal)
LENNY PERMAL                    -Borrower          WALLIAMMA PERMAL                    -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                            -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                            -Borrower

Pay to the order of:  Suntrust Mortgage Inc.

without recourse
This          day of                         ,200
FIRST ALTERNATIVE MORTGAGE CORP.
145 HUGUENOT STREET
NEW ROCHELLE, NEW YORK 10801
_Courtney Ward_
_Courtney J Ward, Controller_

---

MULTISTATE-FHA  FIXED RATE NOTE (6/96)
Document Systems, Inc. (800) 649-1362                          Page 2 of 2

Utfha.rte

## ALLONGE TO NOTE

CLOSING DATE:  December 31, 2007

Borrowers(s) Name:  Lenny Permal
                    Walliamma Permal

Property Address:  102 Mccellan St
                   Schenectady, NY 12304

Loan Amount: $ 84,572.00

**Pay to the order of**   First Alternative Mortgage Corp

**Without Recourse**

SUNTRUST MORTGAGE INC.,

By: *Jennifer Hatcher* VP
Type Name/Title: Jennifer Hatcher, Vice President

## ALLONGE ATTACHMENT
## FOR ENDORSEMENTS

BORROWER(S) NAME:      LENNY PERMAL
                       WALLIAMMA PERMAL

PROPERTY ADDRESS:      102 MCCLELLAN STREET
                       SCHENECTADY, NEW YORK 12304

LOAN #:                0071128006

NOTE AMOUNT:           $84,572.00

NOTE DATE:             DECEMBER 31, 2007

PAY TO THE ORDER OF    Taylor, Bean & Whitaker
                       Mortgage Corp.
WITHOUT RECOURSE

FIRST ALTERNATIVE MORTGAGE CORP.
COMPANY NAME

BY: _____
    COURTNEY J. WARD, ASST VICE PRESIDENT

ALLONGE TO NOTE

LOAN # 7061284

ALLONGE TO NOTE DATED:  December 31, 2007

LOAN AMOUNT:  $84,572.00

PROPERTY ADDRESS:  102 McClellan Street
                   Schenectady, New York  12304

IN FAVOR OF:  First Alternative Mortgage Corp.


AND EXECUTED BY:  Lenny Perman and Walliamma Permal


PAY TO THE ORDER OF:


WITHOUT RECOURSE:

-----------------------------------------------------
BY: Erla Carter-Shaw
TITLE: Executive Vice President
Taylor Bean & Whitaker Mortgage Corp

S-R

*Schenectady County Endorsement Page*



JOHN J. WOODWARD
Schenectady County Clerk
620 State Street
Schenectady, NY 12305

Document Type ___Mortgage___

From Party ___Pesmal___

To Party ___First Alternative Mortgage Corp.___

RETURN TO ___First Alternative Mortgage Corp.___

___145 Huguenot St. #109___

___New Rochelle, N.Y. 10801___

```
            RECORDED
    01/02/2008 10:47:53 AM
         County Clerk
      JOHN J. WOODWARD
   SCHENECTADY COUNTY, NY

Book/Page: MORT/3395/765
      Total Pages: 11
Receipt No:        476002
Doc No:           CY6081
Inst Num:      200800123

NY LAND SUR          $4.75
NY LAND COMP SUR    $14.25
CO GENERAL REVENUE  $45.50
CO LAND SUR          $0.25
CO LAND COMP SUR     $0.75
COTA MORTGAGE TAX  $186.50
SPECIAL ADDITIONAL $211.50
  TAX
COUNTY MORTGAGE    $211.50
  TAX
BASIC TAX -        $423.00
  SCHENECTADY
    TOTAL PAID  $1,098.00
INV: 476002 USER: EMG
```

Recording Tax Receipt
        Date JAN 02, 2008
I do hereby certify that I have received
on this Mortgage #CY6081 at recordins
Basic Tax      $    423.00
County Tax     $    211.50
Additional Tax $    186.50
Special Addl Tax $  211.50
        Total  $   1032.50
Recording Officer of SCHENECTADY COUNTY, NY

*Visit our Webpage:*
*Schenectadycountyclerk.com*

NOTICE: This endorsement page constitutes the Clerk's endorsement in
accordance with Local Law #7 of 1996–DO NOT DETACH–This page
becomes part of the document. Upon recording, this document becomes
a public record–Please refrain from using personal identifying information
that should not be disclosed to the public.

*True & Certified Copy*

Mortgage Recording Tax:

After Recording Return To:
FIRST ALTERNATIVE MORTGAGE CORP
145 HUGUENOT ST, #109
NEW ROCHELLE, NEW YORK 10801
Loan Number: 0071128006

———————————— [Space Above This Line For Recording Data] ————————————

# MORTGAGE

| FHA CASE NO. |
| --- |
| 371-3744673-703 |

MIN: 1001421-0071128006-0

THIS MORTGAGE ("Security Instrument") is given on   DECEMBER 31, 2007       .
The mortgagor is   LENNY PERMAL AND WALLIAMMA PERMAL

("Borrower").
This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of 3300 S.W. 34th Avenue, Suite 101, Ocala, FL 34474, P.O. Box 2026, Flint, Michigan 48501-2026, tel. (888) 679-MERS.
FIRST ALTERNATIVE MORTGAGE CORP, A NEW YORK CORPORATION       ("Lender")
is organized and existing under the laws of   NEW YORK                     ,
and has an address of   145 HUGUENOT ST, #109, NEW ROCHELLE, NEW YORK
10801                                                                   .
Borrower owes Lender the principal sum of   EIGHTY-FOUR THOUSAND FIVE HUNDRED
SEVENTY-TWO AND 00/100             Dollars (U.S. $ 84,572.00        ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on  JANUARY 1, 2038        .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in  SCHENECTADY                   County, New York:

Section:                 Block:                 Lot(s)/Unit No(s).:

———————————————————————————————————————————————————————————

DocMagic *eForms* 800-649-1362
www.docmagic.com

which has the address of   102 MCCLELLAN ST

[Street]

SCHENECTADY           , New York      12304      ("Property Address"):

[City]                              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.   Payment of Principal, Interest and Late Charge.   Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2.   Monthly Payment of Taxes, Insurance, and Other Charges.   Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4.   In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time

FHA NEW YORK MORTGAGE - MERS
6/96  (12/13/07)                    Page 2 of 9                    DocMagic ℰℱⓇℴⓜⓢ 800-649-1362
                                                                   www.docmagic.com

are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

    3.   Application of Payments.  All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

<u>FIRST</u>, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

<u>SECOND</u>, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

<u>THIRD</u>, to interest due under the Note;

<u>FOURTH</u>, to amortization of the principal of the Note; and

<u>FIFTH</u>, to late charges due under the Note.

    4.   Fire, Flood and Other Hazard Insurance.  Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance.  This insurance shall be maintained in the amounts and for the periods that Lender requires.  Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary.  All insurance shall be carried with companies approved by Lender.  The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail.  Lender may make proof of loss if not made promptly by Borrower.  Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly.  All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property.  Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments.  Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

    5.   Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless the Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control.  Borrower shall notify Lender of any extenuating circumstances.  Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted.  Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default.  Lender may take reasonable action to protect and preserve such vacant or abandoned Property.  Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence.  If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease.  If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

FHA NEW YORK MORTGAGE - MERS
6/96 (12/13/07)             Page 3 of 9           DocMagic *eFermns* 800-649-1362
www.docmagic.com

6.  **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7.  **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8.  **Fees.** Lender may collect fees and charges authorized by the Secretary.

9.  **Grounds for Acceleration of Debt.**

    (a)  **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

        (i)  Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

        (ii)  Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

    (b)  **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j - 3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

        (i)  All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

        (ii)  The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

    (c)  **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

    (d)  **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not

FHA NEW YORK MORTGAGE - MERS
6/96   (12/13/07)                                    Page 4 of 9                    DocMagic *eFarms* 800-649-1362
www.docmagic.com

paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e)   Mortgage Not Insured.   Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within   60 DAYS from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument.   A written statement of any authorized agent of the Secretary dated subsequent to   60 DAYS                 from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility.   Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10.   Reinstatement.   Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument.   This right applies even after foreclosure proceedings are instituted.   To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding.   Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11.   Borrower Not Released; Forbearance by Lender Not a Waiver.   Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest.   Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest.   Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12.   Successors and Assigns Bound; Joint and Several Liability; Co-Signers.   The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b).   Borrower's covenants and agreements shall be joint and several.   Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13.   Notices.   Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method.   The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender.   Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14.   Governing Law; Severability.   This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.   In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.   To this end the provisions of this Security Instrument and the Note are declared to be severable.

15.   Borrower's Copy.   Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16.   Hazardous Substances.   Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property.   Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law.   The preceding two sentences shall not apply

FHA NEW YORK MORTGAGE - MERS
6/96  (12/13/07)                              Page 5 of 9                    DocMagic *eFormns* 800-649-1362
www.docmagic.com

to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Assignment of Rents. Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may bring a lawsuit to take away all of Borrower's remaining rights in the Property and have the Property sold. At this sale Lender or another person may acquire the Property. This is known as "foreclosure and sale." In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by law and will have the right to add all reasonable attorneys' fees to the amount Borrower owes Lender, which fees shall become part of the Sums Secured.

Lender may require immediate payment in full under this paragraph 18 only if all of the following conditions are met:

(A) Borrower fails to keep any promise or agreement made in this Security Instrument, including the promises to pay when due the Sums Secured.

(B) Lender sends to Borrower, in the manner described in paragraph 13 above, a notice that states:

(i) The promise or agreement that Borrower failed to keep;

(ii) The action that Borrower must take to correct that default;

(iii) A date by which Borrower must correct the default. That date must be at least 30 days from the date on which the notice is given;

(iv) That if Borrower does not correct the default by the date stated in the notice, Lender may require immediate payment in full, and Lender or another person may acquire the Property by means of foreclosure and sale;

(v) That if Borrower meets the conditions stated in paragraph 10 above, Borrower will have the right to have Lender's enforcement of this Security Instrument discontinued and to have the Note and this Security Instrument remain fully effective as if immediate payment in full had never been required; and

FHA NEW YORK MORTGAGE - MERS
6/96  (12/13/07)                              Page 6 of 9                              DocMagic *eForms* 800-649-1362
                                                                                      www.docmagic.com

(vi)  That Borrower has the right in any lawsuit for foreclosure and sale to argue that Borrower kept the promises and agreements under the Note and under this Security Instrument, and to present any other defenses that Borrower may have.

(C)  Borrower does not correct the default stated in the notice from Lender by the date stated in that notice.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act.  Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

19.  **Lender's Obligation to Discharge This Security Instrument.**  When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied.  Borrower will pay all costs of recording the discharge in the proper official records.  Borrower agrees to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that Borrower pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

20.  **Agreement About New York Lien Law.**  Borrower will receive all amounts lent by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law.  This means that if, on the date this Security Instrument is recorded, construction or other work on any building or other improvement located on the Property has not been completed for at least four months, Borrower will: (A) hold all amounts which Borrower receives and which Borrower has a right to receive from Lender under the Note as a "trust fund"; and (B) use those amounts to pay for that construction or work before Borrower uses them for any other purpose.  The fact that Borrower is holding those amounts as a "trust fund" means that for any building or other improvement located on the Property Borrower has a special responsibility under the law to use the amount in the manner described in this paragraph 20.

21.  **Riders to this Security Instrument.**  If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were in a part of this Security Instrument.

[Check applicable box(es)].

☐ Condominium Rider ☐ Graduated Payment Rider ☐ Growing Equity Rider

☐ Planned Unit Development Rider ☐ Adjustable Rate Rider ☐ Rehabilitation Loan Rider

☐ Non-Owner Occupancy Rider ☐ Other [Specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 9 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_Lenny Permal_ (Seal)
LENNY PERMAL                    -Borrower

_Walliamma Permal_ (Seal)
WALLIAMMA PERMAL              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

Witness:                                Witness:

_____               _____

———————————— [Space Below This Line For Acknowledgment] ————————————

State of New York                                    )
                                                     ) ss.
County of _Albany_____                     )

   On the __31__ day of _December_____ , in the year _2007_ , before me,

the undersigned, personally appeared _LENNY PERMAL AND WALLIAMMA PERMAL_____

_____

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s)
is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of
which the individual(s) acted, executed the instrument.

                                              _____
                                                  Notary Public State of New York

                              JAMES D. KERR
                         Notary Public, State of New York
                         Qual. in Schenectady County
                              No. 02KE5041673
                         Commission expires April 10, 20_11_      Print or Type Name

           (Seal, if any)                       My commission expires: _____

Tax Map Information No.:

FHA NEW YORK MORTGAGE - MERS
6/36  (12/13/07)                      Page 9 of 9                DocMagic *eForms* 800-649-1362
                                                                    www.docmagic.com

# SCHEDULE A
### (Description)

All that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Schenectady, County of Schenectady and State of New York, with the buildings thereon on the easterly side of McClellan Street, in the Former 4th now 12th Ward of said city, known and distinguished as a portion of Lot No. 39 on map of building lots in said 4th Ward surveyed and laid out for Philip Becker A.D. 1870, bounded and described as follows:  on the West by McClellan Street, as designated on said map, about 33.4 feet along the same; on the South by Becker Street, as designated on said map, 120 feet along the same; on the East by a lot heretofore forming a part of Lot No. 39 on said map, 33.4 feet along the same; on the North by Lot No. 40, as designated on said map, 120 feet along the same, being the westerly 120 feet of Lot No. 39, as designated on said map, which map was duly filed in the Schenectady County Clerk's Office, in Plat Cabinet A-150, less 10 feet taken from the front of said lot, for the widening of McClellan Street.

2
2



## Schenectady County Endorsement Page

JOHN J. WOODWARD
Schenectady County Clerk
620 State Street
Schenectady, NY  12305

RECORDED
10/23/2008 12:32:28 PM
County Clerk
JOHN J. WOODWARD
SCHENECTADY COUNTY, NY



DOCUMENT  TYPE    *Assignment of Mortgage*

Book/Page: MORT/3977/333
Total Pages: 2

Receipt No:         514192
Doc No:        2008-1490
Inst Num:      200344119

FROM  PARTY    *MERS as nominee for First*

FROM  PARTY    *Alternative Mortgage Corp.*

| | |
|---|---|
| NY LAND SUR | $4.75 |
| NY LAND COMP SUR | $14.25 |
| CO GENERAL REVENUE | $18.50 |
| CO LAND SUR | $0.25 |
| CO LAND COMP SUR | $0.75 |
| TOTAL PAID | $38.50 |

INV: 514192 USER: DOF

TO  PARTY    *Taylor, Bean and Whitaker*

TO  PARTY    *Mortgage Corp.*

RETURN  TO       Closing USA, LLC
Attn: Default
250 Mile Crossing Blvd., Ste. 4
Rochester, NY 14624

IMPORTANT

This sheet constitutes the Clerk's endorsement in accordance with Local Law #7 of 1996 (Effective
9/1/96).  DO NOT DETACH.  Upon recording, this page becomes part of the document.

*how*
*7061284*

S&D # 08-074777

Section 49.51 Block 4 Lot 1

## ASSIGNMENT OF MORTGAGE

KNOW THAT

Mortgage Electronic Registration Systems Inc., as nominee for, First Alternative Mortgage Corp., a corporation, organized and existing under the laws of the United States of America, having an office at 145 Huguenot Street, #109, New Rochelle, New York 10801, Assignor,

in consideration of TEN AND 00/100 DOLLARS ($10.00) and other good and valuable consideration, paid by

Taylor, Bean and Whitaker Mortgage Corp., having an office at 1417 N. Magnolia Avenue, Ocala, Florida 34475, Assignee,

hereby assigns unto the assignee, a certain Mortgage dated December 31, 2007 made by Lenny Permal and Walliamma Permal to Mortgage Electronic Registration Systems, Inc., as nominee for First Alternative Mortgage Corp. in the principal sum of $84,572.00 and recorded in the Schenectady County Clerk's Office on January 2, 2008 in 3895 of Mortgages, page 765.

The mortgaged premises is known as 102 McCellan Street, Schenectady, NY 12308

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

TOGETHER with the bond or note or obligation described in said mortgage, and the moneys due and to grow due thereon with the interest; TO HAVE AND TO HOLD the same unto the assignee and to the successors, legal representatives and assigns of the assignee forever.

The word "assignor" or "assignee" shall be construed as if it read "assignors" or "assignees" whenever the sense of this instrument so requires.

IN WITNESS WHEREOF, the assignor has duly executed this assignment.
the 30th day of September in the year 2008.

Mortgage Electronic Registration Systems Inc.,
as nominee for First Alternative Mortgage Corp.

BY: _____
Erla Carter-Shaw Executive Vice-President

STATE OF Florida                )
                                )ss
COUNTY OF Marion                )

On the 30th day of September in the year 2008 before me, the undersigned, a Notary Public in and for said State, personally appeared Erla Carter-Shaw, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

Sworn to before me this

30th day of September, 2008

_____
Notary Public Christina Rodes

RECORD & RETURN TO:

NOTARY PUBLIC-STATE OF FLORIDA
Christina Rodes
Commission # DD732924
Expires:    NOV. 07, 2011
BONDED THRU ATLANTIC BONDING CO., INC.

Closing USA, LLC
Attn: Default
250 Mile Crossing Blvd., Ste. 4
Rochester, NY 14624

DS080038943

MORT Book 3977 Page 334
Doc No 2008-14490

RECORD & RETURN TO.                          SECTION:49.51
Frenkel, Lambert, Weiss, Weisman & Gordon, LLP    BLOCK:4
20 West Main Street                          LOT:1
Bay Shore, New York 11706                    COUNTY: Schenectady

## ASSIGNMENT OF MORTGAGE

Know that Taylor, Bean and Whitaker Mortgage Corp. ("Assignor"), having a place of business at 1417 N. Magnolia Avenue, Ocala, Florida 34475, in consideration of TEN DOLLARS ($10.00) and other good and valuable consideration paid by Bank of America, N.A., ("Assignee"), having a place of business at 7105 Corporate Drive, Plano, TX 75024, does hereby assign and transfer unto the Assignee the following described Mortgage or Deed of Trust duly recorded in the office of real property records in the County of Schenectady, for the premises known as  102 McClellan Street, Schenectady, NY 12308,  together with all of assignor's rights with respect to the underlying note, as follows.

MORTGAGOR:    Lenny Permal and Walliamma Permal
MORTGAGEE:    Mortgage Electronic Registration Systems, Inc., acting solely as a nominee
              for  First Alternative Mortgage Corp.
AMOUNT:       $4,572.00
DATE:         December 31, 2007
RECORDED:     January 2, 2008
BOOK:         3895
PAGE:         765

Thereafter, the mortgage was assigned to Taylor, Bean and Whitaker Mortgage Corp. by an assignment recorded on October 23, 2008 in Book 3977 at page 333.

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

To have and to hold the same unto the Assignee, and to the successors, legal representatives and assigns of the Assignee forever.

In Witness whereof, the Assignor has hereunto set his/his hand this 28th day of September, 2012

                                        Bank of America, N.A., successor by merger to BAC
                                        Home Loans Servicing L.P. FKA Countrywide Home
IN PRESENCE OF:                         Loans Servicing LP, as Attorney-in-fact for
                                        Taylor, Bean and Whitaker Mortgage Corp.:
                                        Pursuant to 12 U.S.C. 1721(g).

_Kevin Anthony Kerestes_                BY: _Stefanie J Buchanan_
                                            Stefanie J Buchanan
                                            Assistant Vice President
                                        As attorney in fact pursuant to power of attorney

                                                                        SJB  RMT
                                        or
                                        As authorized agent pursuant to Board of
                                        Resolutions and/or appointment    SJB  RMT
                                                                          RMT


STATE OF Pennsylvania      )
                           )  SS :
COUNTY OF Allegheny        )

On the 28th day of September     , in the year 2012, before me, the undersigned, personally appeared _Stefanie J Buchanan_ , personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument and that such individual made such appearance before the undersigned in _Allegheny_     County.

_Robert M Thiebaud_
Notary Public

*Our file No.: 01-055339-F00, (Lenny Permal and Walliamma Permal, 102 McClellan Street, Schenectady, NY 12308)*

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Robert M. Thiebaud, Notary Public
City of Pittsburgh, Allegheny County
My Commission Expires Jan. 19, 2016

UNIFORM FORM CERTIFICATE OF ACKNOWLEDGEMENT
(OUTSIDE OF NEW YORK STATE)

STATE OF _Pennsylvania_ )
County of _Allegheny_ )

On the _28th_ day of _September_, in the year of 20 _12_ before me, the undersigned, personally appeared _Stefanie J Buchanan_, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(is)(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in _Pittsburgh_, _Pennsylvania_.
(Inert the city or political subdivision and the state or county or other place the acknowledgement was taken).

_Robert M Thiebaud_ NOTARY PUBLIC
(Signature and office of individual taking proof.)

CERTIFICATE OF CONFORMITY
COMMONWEALTH OF PENNSYLVANIA
COUNTY OF ALLEGHENY

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Robert M. Thiebaud, Notary Public
City of Pittsburgh, Allegheny County
My Commission Expires Jan. 19, 2016

That the undersigned does hereby certify that he/she is an attorney at law duly admitted to practice in the Commonwealth of Pennsylvania; that he/she is a person duly qualified to make this Certificate of Conformity pursuant to NYS RPL 299-a; that he/she does hereby certify that the acknowledgment attached hereto was taken in the manner prescribed by the laws of the Commonwealth of Pennsylvania and that the form of acknowledgment conforms to the laws of the Commonwealth Of Pennsylvania.

IN WITNESS WHEREOF, I have hereunto set my hand this _28th_ day of _September_, 20 _12_.

_Michael R. Pfeffer_
Print Name: Michael R. Pfeffer
PA Attorney I.D. No.: 89138
225 Fifth Avenue
Pittsburgh, Pennsylvania 15222

PERMAL, LENNY/102 MCCELLAN ST SCHENECTADY New York 12308

*Schenectady County Endorsement Page*

JOHN J. WOODWARD
Schenectady County Clerk
620 State Street
Schenectady, NY 12305



RECORDED
07/02/2014 3:48:05 PM
County Clerk
JOHN J. WOODWARD
SCHENECTADY COUNTY, NY

Book/Page: MORT/4513/562
Total Pages: 3
Receipt No:          756395
Doc No:           2014-239
Inst Num:        201405314

NY LAND SUR           $4.75
NY LAND COMP SUR     $14.25
CO GENERAL REVENUE   $35.50
CO LAND SUR           $0.25
CO LAND COMP SUR      $0.75
   TOTAL PAID        $55.50
INV: 756395 USER: TMH

Document Type *ASSIGNMENT OF MORTGAGE*

*BANK OF AMERICA, NA --- TAYLOR*

From Party *BRANT WHITAKER*

To Party *BANK OF AMERICA, NA*

RETURN TO    CoreLogic
PPE
   Mail Stop: ASGN
   1 CoreLogic Drive
   Westlake, TX 76262-9823

*Visit our Webpage:*
*Schenectadycountyclerk.com*

NOTICE: This endorsement page constitutes the Clerk's endorsement in
accordance with Local Law #7 of 1996--DO NOT DETACH--This page
becomes part of the document, Upon recording, this document becomes
a public record--Please refrain from using personal identifying information
that should not be disclosed to the public.

Recording Requested By:
Bank of America
Prepared By: Diana De Avila
800-444-4302
When recorded mail to:
CoreLogic
Mail Stop: ASGN
1 CoreLogic Drive
Westlake, TX 76262-9823

MORT Book 4513 Page 563
Doc No 2014-239

Nos

DocID# 1662271148071631
Property Address:
102 McClellan St
Schenectady, NY 12304-1128
Property Location:
City of SCHENECTADY
NY0-AM  27379108  C  1/29/2014  FCL01

This space for Recorder's use

## ASSIGNMENT OF MORTGAGE

For Value Received, BANK OF AMERICA, N.A. SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, FKA COUNTRYWIDE HOME LOANS SERVICING LP, AS ATTORNEY-IN-FACT FOR GOVERNMENT NATIONAL MORTGAGE ASSOCIATION FOR TAYLOR, BEAN & WHITAKER PURSUANT TO 12 U.S.C., 1721 (G), the undersigned holder of the Mortgage described below (herein "Assignor") whose address is 1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063 does hereby grant, sell, assign, transfer and convey unto BANK OF AMERICA, N.A. whose address is 1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063 all beneficial interest under that certain security instrument described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said security instrument.

| | |
|---|---|
| Beneficiary: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FIRST ALTERNATIVE MORTGAGE CORP, A NEW YORK CORPORATION, ITS SUCCESSORS AND ASSIGNS |
| Made By: | LENNY PERMAL AND WALLIAMMA PERMAL |
| Date of Mortgage: | 12/31/2007 |
| Original Loan Amount: | $84,572.00 |
| Section: 49.51    Lot: 1    Block: 4 | |

Recorded in Schenectady County, NY on: 1/2/2008, book MORT 3895, page 765 and instrument number 200800123

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

This Mortgage has not been assigned unless otherwise stated below:
Assigned From:  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FIRST ALTERNATIVE MORTGAGE CORP, ITS SUCCESSORS AND ASSIGNS
Assigned To:  TAYLOR, BEAN AND WHITAKER MORTGAGE CORP.
Recording Date: 10/23/2008  Book/Liber:  MORT 3977  Page:  333  Instrument Number:  200844119

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on Dated:
JAN 3 0 2014

BANK OF AMERICA, N.A. SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, FKA COUNTRYWIDE HOME LOANS SERVICING LP, AS ATTORNEY-IN-FACT FOR GOVERNMENT NATIONAL MORTGAGE ASSOCIATION FOR TAYLOR, BEAN & WHITAKER PURSUANT TO 12 U.S.C., 1721 (G)

By: _____
Beverly Brooks
Assistant Vice President

610  022711480  D4  001  001

MORT Book 4513 Page 564
Doc No 2014-239

State of California
County of Ventura

On ___JAN 3 0 2014___ before me, _____Carmen L. Morse_____, Notary Public, personally
appeared _____Beverly Brooks_____, who proved to me on the basis of satisfactory evidence to be
the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: _____    Carmen L. Morse          (Seal)
My Commission Expires: _____October 16, 2015_____

```
CARMEN L. MORSE
Commission # 1956846
Notary Public - California
Los Angeles County
My Comm. Expires Oct 16, 2015
```

DocID#        1662271148071631

30702984

*Schenectady County Endorsement Page*



JOHN J. WOODWARD
Schenectady County Clerk
620 State Street
Schenectady, NY 12305

NB124814a

```
        RECORDED
03/20/2014 11:41:35 AM
        County Clerk
     JOHN J. WOODWARD
   SCHENECTADY COUNTY, NY

Book/Page: MORT/4548/584
        Total Pages: 3
Receipt No:            781358
Doc No:            2014-1386
Inst Num:         201440688

NY LAND SUR         $4.75
NY LAND COMP SUR   $14.25
CO GENERAL REVENUE $35.50
CO LAND SUR         $0.25
CO LAND COMP SUR    $0.75
   TOTAL PAID       $55.50
INV: 781358 USER: GMS
```

Document Type ___Assignment of Mortgage___

From Party ___Bank of America, N.A.___

To Party ___Secretary of Housing and Urban Development___

RETURN TO   FEDEX

Avenue 365 Lender Services, LLC
401 Plymouth Road
Suite 550
Plymouth Meeting, PA 19462

**ATTENTION:** If the R & R (Record and Return to) on the
cover page is different from the one on the document, the
document will be returned to the one on the cover page.

**NOTICE:** This endorsement page constitutes the Clerk's
endorsement in accordance with Local Law #7 of 1996–DO
NOT DETACH–This page becomes part of the document.
Upon recording, this document becomes a public record–
Please refrain from using personal identifying information
that should not be disclosed to the public.

Please be advised that General Business Law Section 399-dd(6) states as follows:

No person may file any document available for public inspection with any state agency, political subdivision, or in any court of this state that contains a social security account
number of any person, unless such other person is a dependent child, or has consented to such filing, except as required by federal or state law or regulation, or by court rule.

It further states that under General Business Law Section 399-dd(7) that the NYS Attorney General's Office may take action against you for any violation of General Business Law
Section 399-dd.

Recording Requested By:
Bank of America, N.A.
Prepared By: Ralph Flores
800-444-4302

When recorded mail to:
Avenue 365 Lender Services, LLC
Ref: NB Assignments
401 Plymouth Road, Suite 500
Plymouth Meeting, PA 19462

DocID# 4712271148015301
Property Address:
102 McClellan St
Schenectady, NY 12304-1128
Property Location:
City of SCHENECTADY
NY0-AM   29016103  C  4/1/2014  PSL0303

This space for Recorder's use

## ASSIGNMENT OF MORTGAGE

For Value Received, BANK OF AMERICA, N.A., the undersigned holder of the Mortgage described below (herein "Assignor") whose address is 1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063 does hereby grant, sell, assign, transfer and convey unto SECRETARY OF HOUSING AND URBAN DEVELOPMENT whose address is 451 7TH STREET, S.W., WASHINGTON, D.C. 20410 all beneficial interest under that certain security instrument described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said security instrument.

Beneficiary:          MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS
                      NOMINEE FOR FIRST ALTERNATIVE MORTGAGE CORP, A NEW YORK
                      CORPORATION, ITS SUCCESSORS AND ASSIGNS
Made By:              LENNY PERMAL AND WALLIAMMA PERMAL
Date of Mortgage:     12/31/2007
Original Loan Amount:  $84,572.00
Section: 049.51    Lot: 1    Block: 4
Recorded in Schenectady County, NY on: 1/2/2008, book MORT 3895, page 765 and instrument number 200800123

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.


This Mortgage has not been assigned unless otherwise stated below:
Assigned From: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FIRST ALTERNATIVE MORTGAGE CORP, ITS SUCCESSORS AND ASSIGNS
Assigned To: TAYLOR, BEAN AND WHITAKER MORTGAGE CORP.
Recording Date: 10/23/2008 Book/Liber: MORT 3977 Page: 333 Instrument Number: 200844119

Assigned From: BANK OF AMERICA, N.A. SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, FKA COUNTRYWIDE HOME LOANS SERVICING LP, AS ATTORNEY-IN-FACT FOR GOVERNMENT NATIONAL MORTGAGE ASSOCIATION FOR TAYLOR, BEAN & WHITAKER PURSUANT TO 12 U.S.C., 1721 (G)
Assigned To: BANK OF AMERICA, N.A.
Recording Date: 2/7/2014 Book/Liber: MORT 4513 Page: 562 Instrument Number: 201405314


IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on Dated:
APR 0 4 2014

                                    BANK OF AMERICA, N.A.

                                    By: _____
                                                  Lisa Nix
                                           Assistant Vice President

MORT Book 4548 Page 586
Doc No 2014-1586

State of California
County of Los Angeles

On ___APR - 4 2014___ before me, _____Takayuki E. Uto_____, Notary Public, personally
appeared _____Lisa Nix_____, who proved to me on the basis of satisfactory evidence to be
the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: _____Takayuki E. Uto_____          (Seal)
My Commission Expires: ___05/24/2017___

TAKAYUKI E. UTO
Commission # 2026020
Notary Public - California
Los Angeles County
My Comm. Expires May 24, 2017

DocID#    4712271148015301

30702984

NB124814.3

*Schenectady County Endorsement Page*



**JOHN J. WOODWARD**
Schenectady County Clerk
620 State Street
Schenectady, NY 12305

Document Type _ASGM_

From Party _HUD_

To Party _SROF 2013 S3 REMIC TRUST I/_
_US BANK NA (TRUSTEE)_

RETURN TO ^FEDEX
_AVENUE 365 LENDER SERVICES LLC_

_401 PLYMOUTH ROAD  SUITE 550_

_PLYMOUTH MEETING PA 19462_

```
          RECORDED
03/20/2014 11:42:18 AM
        County Clerk
      JOHN J. WOODWARD
   SCHENECTADY COUNTY, NY

Book/Page: MORT/4548/587
        Total Pages: 3
Receipt No:           781358
Doc No:           2014-1387
Inst Num:        201440690

NY LAND SUR          $4.75
NY LAND COMP SUR    $14.25
CO GENERAL REVENUE  $35.50
CO LAND SUR          $0.25
CO LAND COMP SUR     $0.75
   TOTAL PAID       $55.50
INV: 781358 USER: GMS
```

ATTENTION: If the R & R (Record and Return to) on the
cover page is different from the one on the document, the
document will be returned to the one on the cover page.

NOTICE: This endorsement page constitutes the Clerk's
endorsement in accordance with Local Law #7 of 1996–DO
NOT DETACH–This page becomes part of the document.
Upon recording, this document becomes a public record–
Please refrain from using personal identifying information
that should not be disclosed to the public.

Please be advised that General Business Law Section 399-dd(6) states as follows:

No person may file any document available for public inspection with any state agency, political subdivision, or in any court of this state that contains a social security account
number of any person, unless such other person is a dependent child, or has consented to such filing, except as required by federal or state law or regulation, or by court rule.

It further states that under General Business Law Section 399-dd(7) that the NYS Attorney General's Office may take action against you for any violation of General Business Law
Section 399-dd.

Recording Requested By:
Bank of America, N.A.
Prepared By: Marivel Castro

When recorded mail to:
Avenue 365 Lender Services, LLC
Ref: NB Assignments
401 Plymouth Road, Suite 500
Plymouth Meeting, PA 19462

DocID# 7972271148017197

Property Address:
102 McClellan St
Schenectady, NY 12304-1128
Property Location:
City of SCHENECTADY
NY0-AM  29184171  C  4/11/2014  PSL0303A

This space for Recorder's use

## ASSIGNMENT OF MORTGAGE

For Value Received, THE SECRETARY OF HOUSING AND URBAN DEVELOPMENT BY PRMF ACQUISITION, LLC, ITS ATTORNEY IN FACT, the undersigned holder of the Mortgage described below (herein "Assignor" whose address is 451 7TH STREET, S.W., WASHINGTON, D.C. 20410 does hereby grant, sell, assign, transfer and convey unto U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR SROF-2013-S3 REMIC TRUST I whose address is 60 LIVINGSTON AVENUE, EP-MN-WS3D, ST. PAUL, MN 55107 all beneficial interest under that certain security instrument described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said security instrument.

Beneficiary:            MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS
                        NOMINEE FOR FIRST ALTERNATIVE MORTGAGE CORP, A NEW YORK
                        CORPORATION, ITS SUCCESSORS AND ASSIGNS
Made By:                LENNY PERMAL AND WALLIAMMA PERMAL
Date of Mortgage:       12/31/2007
Original Loan Amount:   $84,572.00
Section: 049.51    Lot: 1    Block: 4
Recorded in Schenectady County, NY on: 1/2/2008, book MORT 3895, page 765 and instrument number 200800123

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

This Mortgage has not been assigned unless otherwise stated below:
Assigned From: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FIRST ALTERNATIVE MORTGAGE CORP, ITS SUCCESSORS AND ASSIGNS
Assigned To: TAYLOR, BEAN AND WHITAKER MORTGAGE CORP.
Recording Date: 10/23/2008 Book/Liber: MORT 3977 Page: 333 Instrument Number: 200844119

Assigned From: BANK OF AMERICA, N.A. SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, FKA COUNTRYWIDE HOME LOANS SERVICING LP, AS ATTORNEY-IN-FACT FOR GOVERNMENT NATIONAL MORTGAGE ASSOCIATION FOR TAYLOR, BEAN & WHITAKER PURSUANT TO 12 U.S.C., 1721 (G)
Assigned To: BANK OF AMERICA, N.A.
Recording Date: 2/7/2014 Book/Liber: MORT 4513 Page: 562 Instrument Number: 201405314

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on Dated:

_8/1/14_

*by Avenue 365 Lender Services, LLC, its designee, by Power of Attorney recorded in Maricopa County, Arizona as Inst. #20140276293

THE SECRETARY OF HOUSING AND URBAN DEVELOPMENT BY PRMF ACQUISITION, LLC, ITS ATTORNEY IN FACT ✱

By: _____

Matthew Stubbe
Authorized Signatory

NB124814_AOM_2

MORT Book 4548 Page 589
Doc No 2014-1387

State of Pennsylvania

County of Montgomery

Before me, Corian Kane, duly commissioned Notary Public, on this day personally appeared Matthew Stubbe,
Authorized Signatory of Avenue 365 Lender Services, LLC, designee for PRMF Acquisition LLC, attorney-
in-fact for Secretary of Housing and Urban Development, personally known to me to be the person whose name
is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes
and consideration therein expressed.

Given under my hand and seal of office this 1st day of August, 2014.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
CORIAN KANE - NOTARY PUBLIC
City of Philadelphia, Philadelphia County
MY COMMISSION EXPIRES APR. 08, 2015

Notary Public's Signature

Printed Name:  Corian Kane

My Commission Expires: 4/8/2015

**Schenectady County Endorsement Page**

RECORDED
08/12/2015 9:48:15 AM
County Clerk
JOHN J. WOODWARD
SCHENECTADY COUNTY, NY

JOHN J. WOODWARD
Schenectady County Clerk
620 State Street
Schenectady, NY 12305

Book/Page: MORT/4623/3
Total Pages: 3
Receipt No:        828900
Doc No:        2015-1249
Inst Num:        201537124

| | |
|---|---|
| NY LAND SUR | $4.75 |
| NY LAND COMP SUR | $14.25 |
| CO GENERAL REVENUE | $37.50 |
| CO LAND SUR | $0.25 |
| CO LAND COMP SUR | $0.75 |
| TOTAL PAID | $57.50 |

INV: 828900 USER: GMS

DOCUMENT TYPE          Assignment

FROM PARTY          U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR SROF-2013-S3
REMIC TRUST I  Orion Financial Group, Inc. Its Attorney in Fact

FROM PARTY

TO PARTY          USROF III LEGAL TITLE TRUST 2015-1, BY U.S. BANK NATIONAL
ASSOCIATION, AS LEGAL TITLE TRUSTEE

TO PARTY

RETURN TO          Orion Financial Group, Inc.
2860 Exchange Blvd., Suite 100
Southlake, TX 76092
817-424-1175

IMPORTANT

This sheet constitutes the Clerk's endorsement in accordance with Local Law #7 of 1996 (Effective 9/1/96).  DO NOT DETACH.
Upon recording, this page becomes part of the document.

*Note: This cover is a reduction from the original 8 ½" x 14" size*

BC 30702984
OS 92496820

PREPARED BY AND RETURN TO:
M. E. Wileman
2860 Exchange Blvd. # 100
Southlake, TX 76092

**Assignment of Mortgage**

Send Any Notices To Assignee.

For Valuable Consideration, the undersigned,  **U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR SROF-2013-S3 REMIC TRUST I** Orion Financial Group, Inc. its Attorney in Fact 60 Livingston Avenue, EP-MN-WS3D, St. Paul, MN 55107 **(Assignor)** by these presents does assign, and set over, without recourse, to **USROF III LEGAL TITLE TRUST 2015-1, BY U.S. BANK NATIONAL ASSOCIATION, AS LEGAL TITLE TRUSTEE** 60 Livingston Avenue, EP-MN-WS3D, St. Paul, MN 55107 **(Assignee)** the described mortgage with all interest, all liens, any rights due or to become due thereon, executed by **LENNY PERMAL AND WALLIAMMA PERMAL** to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ('MERS') AS NOMINEE FOR FIRST ALTERNATIVE MORTGAGE CORP, A NEW YORK CORPORATION ITS SUCCESSORS AND ASSIGNS.   Said mortgage **Dated: 12/31/2007** is recorded in the **State of NY, County of Schenectady on 1/2/2008, as Book 3895 Page 765 AMOUNT: $ 84,572.00**   SEE ATTACHED EXHIBIT A
    Property Address: 102 MCCELLAN ST, SCHENECTADY, NY 12304

This Assignment is not subject to the requirements of Section 275 of the Real Property law, because it is an assignment within the secondary mortgage market.
IN WITNESS WHEREOF, the undersigned corporation has caused this instrument to be executed by its proper officer.
Executed on: July 30, 2015
U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR SROF-2013-S3 REMIC TRUST I  Orion Financial Group, Inc.
Its Attorney in Fact

By: _____

Michael E Wileman, President

PERMAL    OFG11 *15070858*

State of Texas, County of Tarrant
On July 30, 2015, before me, the undersigned, personally appeared Michael E Wileman, President, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the County of Tarrant, State of Texas.

JULIE BACON
MY COMMISSION EXPIRES
November 30, 2018

Notary public, Julie Bacon
My commission expires: November 30, 2018

NY   Schenectady

NB124814
NBLLC/ USROF II, II/

**EXHIBIT  B**

NORTHERN DISTRICT OF NEW YORK

In Re:
**Lenny Permal**

                    Debtor(s).          Case No.    _____

## Chapter 13 Plan
☑ Original ☐ Amended
Date: <u>March 20, 2018</u>

IF THIS IS AN AMENDED PLAN, the reason for filing the Amended Plan is _____

**Part 1:  Notices**

**To Creditors:**  Your rights may be affected by this plan. Your claim may be reduced, modified, or eliminated.

You should read this plan carefully and discuss it with your attorney if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.

If you oppose the plan's treatment of your claim or any provision of this plan, you **MUST** file an objection to confirmation at least 7 days before the date set for the hearing on confirmation, unless otherwise ordered by the Bankruptcy Court. The Bankruptcy Court may confirm this plan without further notice if no objection to confirmation is filed. *See* Federal Rule of Bankruptcy Procedure ("Fed. R. Bankr. P.") 3015.

Under 11 U.S.C. § 1325(b)(1)(B), if an unsecured creditor objects to this plan, the Bankruptcy Court may not approve this plan unless the plan provides that all of the Debtor's[1] projected disposable income will be applied to make payments to unsecured creditors under the plan. Absent an objection, distribution of payments under this plan will be made pursuant to the order of distribution set forth in Section 2.6 below. This distribution scheme may result in the secured and priority claims being paid prior to your unsecured claim. **To avoid this result, you MUST file an objection.**

<u>The following matters may be of particular importance.</u> Debtor must check one box on each line to state whether or not the plan includes any of the following items. If an item is checked as "Not Included" or if both boxes are checked, the provision will be ineffective if set out later in the plan.

| 1.1 | A limit on the amount of a secured claim, set out in Sections 3.2 and/or 3.3, which may result in a partial payment or no payment at all to the secured creditor | ☐ Included | ☑ Not Included |
| 1.2 | Avoidance of a judicial lien or nonpossessory, nonpurchase-money security interest, set out in Section 3.4 | ☐ Included | ☑ Not Included |
| 1.3 | Nonstandard provisions, set out in Part 8 | ☐ Included | ☑ Not Included |
| 1.4 | Assumes and/or Rejects Unexpired Leases and Executory Contracts, set out in Part 6 | ☐ Included | ☑ Not Included |

**Debtor is eligible for a discharge pursuant to 11 U.S.C. § 1328(f).** *Check One*

☑ **Yes.**
☐ **No.** If this box is checked, the debtor acknowledges that he/she is NOT eligible for a discharge because the debtor received a discharge in a prior (*check one*)
    ☐ Chapter 7 , 11, or 12 case filed within four years of the date of the filing of the petition in this case; or
    ☐ Chapter 13 case filed within two years of the date of the filing of the petition in this case.

**To Domestic Support Obligation Claimants:** The Debtor will make payments for postpetition domestic support obligations, as that term is defined under 11 U.S.C. § 101(14A), commencing on the date of filing and continuing during the term of the plan. Pre-petition domestic support obligation arrears, if any, are addressed in Part 4. Below are the names of each individual entitled to receive domestic support obligation payments and the amount of such payments:

☑ None
Name of Payee                                    Current Payment Amount

**Part 2:  Plan Payments, Length of Plan and Order of Distribution**

**2.1 Debtor will make regular payments to the chapter 13 trustee ("Trustee") as follows:**

$<u>19.15</u> per <u>month</u> for <u>36</u> months;

[1] In a joint case, any reference to "Debtor' shall mean "Debtors."

(Local Form Plan 12-01-2017)                    1

*Insert additional lines if needed.*

**2.2 Regular payments to the Trustee will be made from future income in the following manner:** *Check all that apply.*
- ☐ Debtor will make payments pursuant to a payroll deduction order.
- ☑ Debtor will make payments directly to the Trustee.
- ☐ Other (specify method of payment): _____

**2.3 Income tax refunds and refunds.**
> Debtor will provide the Trustee (1) with a copy of each income tax return filed during the plan term within 14 days of filing the return, and (2) will turn over to the Trustee all income tax refunds in excess of $1,500.00 received during the plan term. Debtor understands that failure to file tax returns during the term of the plan may constitute grounds for the dismissal or conversion of the case.

**2.4 Additional payments.** *Check one.*
- ☑ **Debtor will remit a modified monthly mortgage payment to the Trustee in the sum of $670 per month until further order of the Court**

**2.5 The total amount of estimated payments to the trustee provided for in  Sections 2.1, 2.3 and 2.4 is $24809.40**

**2.6 Order of Distribution of Plan Payments by the Trustee.** Subject to any alternate provision in Part 8, funds received by the Trustee for distribution to creditors under the plan, absent objection, shall be applied, after payment of applicable Trustee's fees, in the following order of distribution:

> **First:** To pay any and all equal monthly payments required on allowed secured claims under Sections 3.2 and 3.3.
> **Second:** To pay allowed administrative expenses, including attorney's fees under Section 4.3, *pro rata*, until paid in full.
> **Third:** To pay allowed secured claims *pro rata* until paid in full under Section 3.1.
> **Fourth:** To pay allowed priority claims *pro rata* until paid in full under Sections 4.4 and 4.5.
> **Fifth:** To pay allowed unsecured claims *pro rata* under Part 5.

However, in the event the Debtor will make ongoing mortgage or lease installment payments through the plan under Section 3.1 or 6.1, those payments shall be made prior to payment to any other creditor and after payment of applicable Trustee's fees.

**Part 3:    Treatment of Secured Claims**

**3.1 Maintenance of payments and cure of default, if any, for claims secured by real or personal property.** *Check one.*

- ☐ **None.**
- ☑ The Debtor will maintain the current contractual installment payments on the secured claims listed below, with any changes required by the applicable contract and noticed in conformity with any applicable rules. These payments will be disbursed either by the Trustee or directly by the Debtor, as specified below. Creditors being paid directly by the Debtor under the plan shall continue to send customary payment coupons, statements, and notices to the Debtor. Such actions by the creditor shall not constitute or form the basis for finding a violation of the automatic stay. Any existing arrearage on a listed claim will be paid in full through disbursements by the Trustee, with interest, if any, at the rate stated. Unless otherwise ordered by the court, the amounts listed on a proof of claim filed before the filing deadline under Fed. R. Bankr. P. 3002(c) control over any contrary amounts listed below as to the current installment payment and arrearage. In the absence of a contrary timely filed proof of claim, the amounts stated below shall control. If relief from the automatic stay is ordered as to any item of collateral listed in this paragraph, then, unless otherwise ordered by the court, all payments under this paragraph as to that collateral will cease, and all secured claims based on that collateral will no longer be treated by the plan.

| Name of Creditor | Collateral | Current installment payment | Amount of arrearage | Interest rate on arrearage (if applicable) |
|---|---|---|---|---|
| Bank Of AmericA | 102 Mcclellan Street Schenectady, NY 12304 Schenectady County | 1200 | ? | 0.00% |
| | Disbursed by: ☐ Trustee  ☑ Debtor | | | |
| Kia Motors Finance Co | 2016 Kia Sorento 4d ex awd i4 62000 miles | $0.00 | $0.00 | 0.00% |
| | Disbursed by: ☐ Trustee  ☑ Debtor | | | |

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

| Name of Creditor | Collateral | | Current installment payment | Amount of arrearage | Interest rate on arrearage (if applicable) |
|---|---|---|---|---|---|
| | **1707 Carrie Street** | | | | |
| | **Schenectady, NY 12308** | | | | |
| Trustco Bk | **Schenectady County** | | $0.00 | $0.00 | 0.00% |

Disbursed by:
☐ Trustee
☑ Debtor

*Insert additional claims as needed.*

**3.2 Request for valuation of security, payment of fully secured claims, and modification of undersecured claims.** *Check one.*

☑ **None.**
**The remainder of this paragraph will be effective only if box 1.1 in Part 1 of this plan is checked "Included."**

☐ The Debtor requests that the court determine the value of the secured claims listed below. For each non-governmental secured claim listed below, the Debtor states that the value of the secured claim should be paid as set forth below in the column headed *Amount of secured claim (net value).* For claims of governmental units, the value of a secured claim listed in a proof of claim filed in accordance with the Fed. R. Bankr. P. 3002(c) controls over any contrary amount listed below unless otherwise ordered by the court. For each listed claim, the value of the secured claim will be paid in full with interest at the rate stated below.

The portion of any allowed claim that exceeds the amount of the secured claim will be treated as an unsecured claim under Part 5 of this plan. If the amount of a creditor's secured claim is listed below as having no value, the creditor's allowed claim will be treated in its entirety as an unsecured claim under Part 5 of this plan. *If the collateral is the Debtor's principal residence and the Debtor seeks to void a wholly unsecured junior mortgage lien, a separate affidavit providing evidence of value of the property and the amount of each senior lien against the property is to be filed and served upon the affected creditor. Upon confirmation of the plan, Debtor shall submit an order voiding the mortgage lien.*

Unless otherwise ordered by the court, the amount of the creditor's total claim listed on the proof of claim controls over any contrary amounts listed in this paragraph. The holder of any claim listed below as having value in the column headed *Amount of secured claim (net value)* will retain the lien on the property interest of the Debtor or the estate until the earlier of:

(a) payment of the underlying debt determined under nonbankruptcy law, or
(b) discharge of the underlying debt under 11 U.S.C. § 1328, at which time the lien will terminate and be released by the creditor.

| Name of creditor | Collateral | Value of collateral | Amount of claims senior to creditor's claim | Amount of secured claim (net value) | Interest rate | Equal Monthly payment to creditor | Pre-confirmation adequate protection payment |
|---|---|---|---|---|---|---|---|
| -NONE- | | | | | | | |

*Insert additional claims as needed.*

**3.3 Secured claims excluded from 11 U.S.C. § 506.** *Check one.*

☑ **None.**
**If the interest rate stated below is not the contract rate, the remainder of this paragraph will be effective only if box 1.1 in Part 1 of this plan is checked "Included."**
☐ The claims listed below were either:

(1) incurred within 910 days before the petition date and secured by a purchase money security interest in a motor vehicle acquired for the personal use of the Debtor, or

(2) incurred within 1 year of the petition date and secured by a purchase money security interest in any other thing of value.

These claims will be paid in full under the plan with interest at the rate stated below. Unless otherwise ordered by the court, the claim amount stated on a proof of claim filed before the filing deadline under Fed. R. Bankr. P. 3002(c) controls over any contrary amount listed below. In the absence of a contrary timely filed proof of claim, the amounts stated below shall control.

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

| Name of Creditor | Collateral | Amount of claim | Interest rate | Equal Monthly payment to creditor | Pre-confirmation adequate protection payment |
|---|---|---|---|---|---|
| -NONE- | | | | | |

*Insert additional claims as needed.*

**3.4 Lien avoidance.** *Check one.*

☑ **None.**
The remainder of this paragraph will be effective only if box 1.2 in Part 1 of this plan is checked **"Included."**

☐ The judicial liens or nonpossessory, nonpurchase money security interests securing the claims listed below impair exemptions to which the Debtor would have been entitled under 11 U.S.C. § 522(b). Unless otherwise ordered by the court, a judicial lien or security interest securing a claim listed below will be avoided to the extent that it impairs such exemptions upon confirmation of the plan. The amount of the judicial lien or security interest that is avoided will be treated as an unsecured claim in Part 5 to the extent allowed. The amount, if any, of the judicial lien or security interest that is not avoided will be paid in full as a secured claim under the plan. *See* 11 U.S.C. § 522(f) and Fed. R. Bankr. P. 4003(d). If more than one lien is to be avoided, provide the information separately for each lien. *A separate affidavit providing evidence of value of the property and the amount of each additional lien against the property is to be filed and served upon the affected creditor(s). Upon confirmation of the plan, Debtor shall submit an order avoiding the lien(s).*

| Information regarding judicial lien or security interest Name of Creditor | Calculation of lien avoidance | | Treatment of remaining secured claim |
|---|---|---|---|
| | a. Amount of lien | -NONE- | Amount of secured claim after avoidance (line a minus line f) |
| | b. Amount of all other liens | | |
| | c. Value of claimed exemptions on Schedule C | | |
| **Collateral Description/Property Address** | d. Total of adding lines a, b, and c | | Interest rate (if applicable) |
| | | | % |
| **Lien identification** (such as judgment date, date of lien recording, book and page number) | e. Value of debtor(s)' interest in property | | |
| | f. Subtract line e from line d. | | |
| **Collateral owned** solely jointly **Date Collateral acquired** | Extent of exemption impairment *(Check applicable box)* **Line f is equal to or greater than line a.** The entire lien is avoided *(Do not complete the next column)* **Line f is less than line a.** A portion of the lien is avoided. *(Complete the next column)* | | |

*If more than one lien is to be avoided, insert additional table(s) to provide the information separately for each lien.*

**3.5 Surrender of collateral.** *Check one.*

☑ **None.**
☐ Debtor surrenders his or her interest in the following collateral in satisfaction of the secured portion of the creditor's allowed claim. Debtor requests that upon confirmation of this plan the stay under 11 U.S.C. § 362(a) and 1301(a) be terminated as to the collateral. After the plan is confirmed, on request of a party in interest, the court shall promptly enter an order confirming that the stay under 11 U.S.C. § 362(a) and 1301(a) is terminated as to the collateral. Any allowed unsecured claim resulting from the disposition of the collateral will be treated in Part 5 below.

| Name of Creditor | Collateral |
|---|---|
| -NONE- | |

*Insert additional claims as needed.*

**Part 4:**   **Treatment of Fees and Priority Claims**

**4.1 General**

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com                                     Best Case Bankruptcy

Trustee's fees and all allowed priority claims under 11 U.S.C. § 507, including domestic support obligations other than those treated in Section 4.5, will be paid in full based upon a timely filed proof of claim.

**4.2 Trustee's fees**

Trustee's fees are governed by statute and may change during the course of the case but will be no more than 10% of plan payments

**4.3 Attorney's fees for services rendered in connection with this bankruptcy case.**

Debtor's attorney shall be paid $4,325.00, of which $4,015.00 was paid pre-petition and $310.00 shall be paid as an allowed administrative claim as part of the plan.

**4.4 Priority claims other than attorney's fees and those treated in Section 4.5. *Check one.***

- [✓] None.
- [ ] The creditors listed below hold priority claims other than attorney's fees and those treated in Section 4.5

| Name of Creditor | Amount of claim to be paid | Basis for priority treatment |
|---|---|---|
| -NONE- | | |

*Insert additional claims as needed.*

**4.5 Domestic support obligations assigned to or owed to a governmental unit and paid less than full amount. *Check one.***

- [✓] None.
- [ ] The allowed priority claims listed below are based on a domestic support obligation that has been assigned to or is owed to a governmental unit and will be paid less than the full amount of the claim under 11 U.S.C. § 1322(a)(4). This plan provision requires that payments in Section 2.1 be for a term of 60 months. *See* 11 U.S.C. § 1322(a)(4).

| Name of Creditor | Amount of claim to be paid |
|---|---|
| -NONE- | |

*Insert additional claims as needed.*

**Part 5:   Treatment of Nonpriority Unsecured Claims**

**5.1 Nonpriority unsecured claims not separately classified.**

Allowed nonpriority unsecured claims that are not separately classified will be paid, pro rata. The minimum amount to be paid to allowed nonpriority unsecured creditors under the plan shall be the greater of:

| | |
|---|---|
| Liquidation | $0 |
| Disposable Income (Line 45 x 60 months) | $0 |
| Percentage Repayment: | 100.00% |

**5.2 Maintenance of payments and cure of any default on nonpriority unsecured claims. *Check one.***

- [✓] None.
- [ ] The Debtor will maintain the current contractual installment payments on the unsecured claims listed below on which the last payment is due after the final plan payment. These payments will be disbursed either by the Trustee or directly by the Debtor, as specified below. Any existing arrearage amount will be paid in full through disbursements by the Trustee.

| Name of Creditor | Current monthly installment payment | Amount of arrearage |
|---|---|---|
| -NONE- | | |
| | Disbursed by: | |
| | Trustee | |
| | Debtor | |

*Insert additional claims as needed.*

**5.3 Other separately classified nonpriority unsecured claims. *Check one.***

- [✓] None.
- [ ] The nonpriority unsecured allowed claims listed below are separately classified and will be treated as follows.:

| Name of Creditor | Basis for separate classification and treatment | Amount of claim | Percentage of claim to be paid |
|---|---|---|---|
| -NONE- | | | |

*Insert additional claims as needed.*

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

| Part 6: | Executory Contracts and Unexpired Leases |

6.1 The executory contracts and unexpired leases listed below are assumed and will be treated as specified. All other executory contracts and unexpired leases are rejected. *Check one.*

     ☑   **None.**
     The remainder of this paragraph will be effective only if box 1.4 in Part 1 of this plan is checked "**Included.**"
     ☐   Assumed items. Current installment payments will be disbursed either by the Trustee or directly by the Debtor, as specified below, subject to any contrary court order or rule. Arrearage payments will be disbursed by the Trustee.

| Name of creditor | Description of leased property or executory contract | Current installment payment | Amount of arrearage |
| --- | --- | --- | --- |
| -NONE- | | | |
| | | Disbursed by: Trustee Debtor(s) | |

*Insert additional claims as needed.*

| Part 7: | Vesting of Property of the Estate |

7.1 Property of the estate will vest in the Debtor upon completion of the plan.

| Part 8: | Nonstandard Plan Provisions |

8.1 Check "None" or List Nonstandard Plan Provisions
     ☑   **None.**

*Under Bankruptcy Rule 3015(c), nonstandard provisions must be set forth below. A nonstandard provision is a provision not otherwise included in the Local Form Plan or deviating from it. Nonstandard provisions set out elsewhere in this plan are void.*

**The following plan provisions will be effective only if box 1.3 in Part 1 of this plan is checked "Included."**

| Part 9: | Signature(s): |

9.1 Signatures of Debtor and Debtor's Attorney
     The debtor and attorney for the Debtor, if any, must sign below.

| /s/ Lenny Permal | |
| --- | --- |
| **Lenny Permal** Signature of Debtor 1 | Signature of Debtor 2 |
| Executed on **March 20, 2018** | Executed on |
| /s/ Christiaan Van Niekerk | Date **March 20, 2018** |
| **Christiaan Van Niekerk** Signature of Attorney for Debtor(s) | |

**By filing this document, the Debtor, if not represented by an attorney, or the attorney for Debtor certifies that the wording and order of the provisions in this Chapter 13 plan are identical to those contained in the Local Form Plan, other than any nonstandard provisions included in Part 8.**

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com                                                    Best Case Bankruptcy